IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BURNS & RUSSELL CO. of
BALTIMORE, et al.,
    Plaintiffs

v.    :    CIV. NO. AMD 00-3019

OLDCASTLE, INC., et al.,
    Defendants

...oOo...

## MEMORANDUM

Plaintiffs, the Burns & Russell Company of Baltimore and Southeast Capital Corporation (together "the plaintiffs" or "B&R"), have instituted this damages action alleging state common law breach of contract claims and federal and state statutory claims against the following 11 defendants: (1) Oldcastle, Inc.; (2) CRH, plc; (3) Amcor, Inc.; (4) Oldcastle Architectural West, Inc.; (5) Oldcastle APG West, Inc.; (6) Oldcastle APG National, Inc.; (7) Trenwyth Industries, Inc.; (8) Superlite Block, Inc.; (9) Oldcastle Precast, Inc.; (10) Oldcastle Architectural Inc.; and (11) Oldcastle Acquisition Corporation (collectively "the defendants").[1] Now pending are some defendants' motions to dismiss for lack of personal

---

[1] Plaintiffs' 71-page First Amended Complaint consists of 163 paragraphs and the following 20 separately stated counts: Count I: Breach of Contract under the Trademark Agreement; Count II: Breach of Contract under the Know-How Agreement; Count III: Breach of Contract under the Trenwyth Settlement Agreement; Count IV: Breach of Confidential Relationship; Count V: Constructive Fraud; Count VI: Breach of Fiduciary Duty; Count VII: RICO violation; Count VIII: Intentional Concealment and Non-Disclosure; Count IX: Misappropriation and Conversion of Trade Secrets; Count X: Unfair Competition; Count XI: Civil Conspiracy; Count XII: Conversion of Goodwill; Count XIII: Violation of the Section 7 of the Clayton Act; Count XIV: Violation of Section 13 of the Robinson-Patman Act; Count XV:
(continued...)



jurisdiction, insufficient process, and failure to state a claim. *See* Fed.R.Civ.P. 12(b)(2), 12(b)(4), 12(b)(6). Also pending are motions to dismiss the first amended complaint with respect to Oldcastle Precast, Inc. (under Fed. R. Civ. P. 12(b)(6)); and Oldcastle Architectural, Inc., and Oldcastle Acquisition Corp (both under Fed. R. Civ. P. 12(b)(2)). The issues have been fully briefed and no hearing is necessary. I shall grant defendants' motion to dismiss for insufficient service of process regarding B&R's claims against six of the defendants. Also, I shall grant the motions to dismiss filed by defendants Superlite Block, Inc. and Oldcastle Architectural, Inc. because they lack the capacity to be sued. And, defendants' motion to dismiss the first amended complaint with respect to Oldcastle Architectural shall be granted.

For the reasons set forth below, however, I will reserve judgment on defendants' motions to dismiss for lack of personal jurisdiction with respect to defendant Oldcastle, Inc., pending the completion of jurisdictional discovery. I will also reserve judgment on defendants' motions to dismiss for failure to state a claim pending resolution of the outstanding jurisdictional issues.

---

[1](...continued)
Violation of Section 1 of the Sherman Act; Count XVI: omitted; Count XVII: Violation of Section 15 of the Sherman Act; Count XVIII: Violation of Maryland Antitrust Act; Count IX: Tortious Interference with Contractual Relations; Count XX: Accounting.

## *FACTUAL BACKGROUND AND PROCEDURAL HISTORY*

*The Parties*

A brief description of the corporate hierarchy involved in this litigation helps provide a better understanding of the current dispute.

Plaintiff Burns & Russell Company ("B&R") is a Pennsylvania corporation with its principal place of business in Baltimore. B&R provides services to the masonry industry through manufacturing bricks and a variety of masonry products. B&R has also developed its own products, which it allows other companies to utilize through license agreements. One such product is SPECTRA-GLAZE®, a glazed concrete block developed, patented and trademarked by B&R.

The other plaintiff, Southeast Capital Corporation ("Southeast"), is a Maryland corporation that is also involved in the masonry industry. In 1998, Southeast purchased the SPECTRA-GLAZE® trademark, as well as certain technical know-how, from B&R. Sometime thereafter, Southeast licensed rights in the trademark back to B&R. Consequently, both B&R and Southeast (hereinafter collectively referred to as B&R) own and control all of the rights associated with the trademark.

Defendant CRH, plc ("CRH") rests atop the corporate hierarchy that encompasses all 11 defendants in the current litigation. CRH is an Irish corporation, a holding company, that apparently owns a broad range of companies in the concrete building materials industry. Its principal office is in Dublin, Ireland. Complaint at ¶ 3.

Defendant Oldcastle, Inc. ("Oldcastle"), a Delaware corporation with its principal place of business in Atlanta, is a seventh-tier subsidiary of CRH. Oldcastle acts as a holding company for entities doing business in the United States. *Id.* at ¶ 4. B&R alleges that Oldcastle, d/b/a Amcor, obtained a license in order to manufacture B&R's glazed block product. As discussed *infra*, Oldcastle denies this allegation.

Defendant Amcor, Inc. ("Amcor") was a supplier of concrete blocks. In 1960, Amcor acquired rights to the SPECTRA-GLAZE® product through a Trademark Agreement and Patent License Agreement with B&R. B&R alleges that Amcor eventually transferred this license agreement to Oldcastle; thereupon, Oldcastle simultaneously changed its trade name to Amcor. Defendants, however, dispute any involvement by Oldcastle; instead, defendants maintain that Amcor transferred the licensing agreement to Oldcastle APG West, Inc. Defendants also assert that Amcor no longer exists as a separate corporate entity, having merged into Oldcastle Precast on December 31, 1994.

Defendant Oldcastle APG West, Inc. ("APG West"), a Colorado corporation in the business of manufacturing concrete block products, is a third-tier subsidiary of Oldcastle.[2] Its principal place of business is in Littleton, Colorado. According to defendants, APG West, originally under the name of Amcor, manufactured the SPECTRA-GLAZE® product under a license from B&R and sold the glazed blocks throughout Colorado, Arizona, Utah, Oregon,

---

[2] APG West was formerly Oldcastle Architectural West, Inc. ("Architectural West"). It was renamed on December 31, 1999.

Washington, and California.

Defendant Oldcastle Architectural West, Inc. ("Oldcastle Architectural West"), before being renamed, was a second-tier subsidiary of Oldcastle. It was incorporated in Colorado with its principal place of business in Littleton. According to defendants, Oldcastle Architectural West no longer exists as a corporate entity since being renamed as Oldcastle APG West.

Defendant Oldcastle Architectural, Inc. ("Oldcastle Architectural"), a Delaware corporation with its principal place of business in Atlanta, claims to be a holding company for operating entities in the United States. Oldcastle Architectural allegedly acquired Trenwyth Industries, Inc. ("Trenwyth") on December 31, 1998.

Defendant Oldcastle Acquisition Corporation ("Oldcastle Acquisition"), according to B&R, was a subsidiary of Oldcastle, which was merged into defendant Trenwyth, with Trenwyth remaining as the surviving entity. According to defendants, however, defendant Trenwyth is currently an operating division of Oldcastle APG National, Inc. ("APG National"). Originally, Trenwyth existed as a separate legal entity with offices in Arizona, Pennsylvania and Illinois. As a separate corporate entity, Trenwyth was B&R's largest competitor, manufacturing ASTRA-GLAZE®, a glazed concrete block.[3] On or before

---

[3] At one point, Trenwyth was also a licensee of B&R. However, litigation between Trenwyth and B&R arose with regard to their licensing relationship. Eventually, the parties entered in a settlement agreement ("Trenwyth Settlement Agreement"), which allows Trenwyth to produce glazed concrete blocks.

October 3, 1997, Oldcastle Acquisition acquired Trenwyth. Then, on December 31, 1998, Oldcastle Architectural acquired Trenwyth. Finally, on December 31, 1999, Trenwyth was merged into APG National. Defendants maintain that Trenwyth most accurately references an operating division of APG National.

Defendant APG National is a third-tier subsidiary of Oldcastle with its principal place of business in Bethesda, Maryland.

Defendant Oldcastle Precast is a Washington corporation with its principal place of business in Auburn, Washington. Presently, Oldcastle Precast is a third-tier subsidiary of Oldcastle.

Defendant Superlite Block, Inc. ("Superlite") appears to be a defunct corporation with no current legal existence. Effective December 31, 1999, Superlite merged into Oldcastle Architectural West, Inc., which is now known as APG West.

*The Agreements*

On April 17, 1980, B&R and Amcor executed a license agreement ("License Agreement") that, *inter alia*, provided Amcor with the rights to "trade secrets and technical know-how to use all methods of counting masonry units covered by [licensed] patents." License Agreement at ¶ 1(a). The License Agreement permitted Amcor to use the patents in Nevada, Utah and particular counties of Idaho. This agreement replaced a patent agreement which had been transferred, allegedly, to Oldcastle (trading as Amcor) on October

4, 1978.[4] The agreement was to be in effect "until the last to occur of the following: (1) the last expiration date of the United States Letters Patents licensed under this Agreement; (2) the termination of the use by the Licensee of the Licensor's aforesaid trade secrets, technical know-how and other information and skills." License Agreement at ¶ 8(a). The agreement also allowed the licensee to terminate the agreement upon 18 months prior written notice. *Id.* ¶ 8(b).

B&R and Oldcastle Architectural West (d/b/a Amcor) (now APG West, according to defendants) executed the SPECTRAGLAZE® Trademark Agreement ("Trademark Agreement") on January 18, 1994. This agreement licensed the use of the trademark to Amcor. The agreement was to "remain in full force and effect for ten (10) years" "[u]nless sooner canceled." Trademark Agreement at ¶ 8.

On February 21, 1995, B&R and Oldcastle Architectural West (doing business as Amcor)(now APG West, according to defendants) executed an amendment to the 1980 License Agreement. This amendment incorporated additional patents and potential patents and detailed the respective royalty for each unit sold.

In addition to the above licensing agreements, the current litigation also involves an

---

[4]The License Agreement explains the path of the original patent agreement. The original agreement entered into in 1959 was transferred to Glazed Concrete Products, Inc. in 1960, and thereafter transferred to Amcor, Inc. The license agreement states that on October 4, 1978, Amcor transferred the agreement to Oldcastle; and, Oldcastle simultaneously changed its trading name to Amcor. Defendants argue that the present-day Oldcastle, Inc. is not the entity with whom B&R originally contracted and is not a party to any contract.

alleged breach of a settlement agreement that B&R entered into with Trenwyth. B&R executed this agreement on May 16, 1991, resolving all claims which had arisen with regard to their prior licensing relationship. This agreement required Trenwyth to maintain the confidentiality of B&R's "know-how" and technology. It also prohibited Trenwyth from interfering with any of B&R's other licensing relationships.

*The Current Litigation*

B&R alleges that in October 1997, Oldcastle[5] purchased Trenwyth, a manufacturer of glazed masonry blocks under the trade name ASTRA-GLAZE® and a direct competitor of B&R. Trenwyth is an ex-licensee of B&R and had entered into a written agreement not to interfere with B&R's other licensing relationships.

B&R alleges that defendants conspired to acquire control of Trenwyth in order to establish a monopoly in the glazed block industry and to circumvent any obligations owed to B&R, such as the payment of royalties and maintenance of trade secrets. B&R contends that after the acquisition of Trenwyth, defendants closed down their Salt Lake City SPECTRA-GLAZE® plant and transferred all SPECTRA-GLAZE® resources to its ASTRA-GLAZE® operation. B&R alleges that after shutting down the SPECTRA-GLAZE® plant, defendants opened a manufacturing facility in Arizona in order to produce glazed blocks under the name ASTRA-GLAZE®. These actions placed defendants in direct

---

[5]Defendants argue that Trenwyth was acquired not by Oldcastle, but by Oldcastle Acquisition.

competition with B&R. B&R alleges that defendants, acting in concert, are utilizing B&R's confidential information to manufacture the competing block. B&R also contends that Trenwyth's alleged dealings with Oldcastle breached the 1991 Settlement Agreement between B&R and Trenwyth.

*Procedural History*

Plaintiffs filed suit against the following eight defendants on October 5, 2000: (1) Oldcastle; (2) CRH; (3) Amcor; (4) Oldcastle Architectural West; (5) Oldcastle APG West; (6) Oldcastle APG National; (7) Trenwyth Industries; and (8) Superlite Block. Plaintiffs' counsel instructed the clerk to withhold the issuance of summons. On February 7, 2001, I issued an order requiring plaintiffs to show cause why the case should not be dismissed for failure to effect service of process within 120 days as required by Federal Rule of Civil Procedure 4(m). In the meantime, on or about February 1, 2001, plaintiffs had requested of the clerk that summons be issued. On or about February 16, 2001, plaintiffs responded to the order to show cause and filed returns of service.

On March 30, 2001, defendants filed a motion to dismiss. On February May 25, 2001, plaintiffs filed their opposition to that motion and simultaneously filed their first amended complaint adding new counts and new parties, namely Oldcastle Architectural, Oldcastle Precast and Oldcastle Acquisition. On June 15, 2001, defendants filed their reply. Defendants' reply addressed the new counts included within plaintiffs' first amended complaint.

Because defendants' reply referred in part to the first amended complaint, plaintiffs viewed the reply as a motion to dismiss the amended complaint and filed an opposition thereto on June 29, 2001. Subsequently, defendant Oldcastle Precast filed a motion to dismiss the first amended complaint on July 16, 2001. Plaintiffs filed their opposition to that motion on July 30, 2001. On August 2, 2001, Defendants Oldcastle Architectural filed a motion to dismiss the first amended complaint. On August 14, 2001, defendant Oldcastle Acquisition filed its motion to dismiss the first amended complaint. On August 17, 2001, defendant Oldcastle Precast filed its reply to its motion to dismiss. Plaintiffs filed their opposition to Oldcastle Architectural and Oldcastle Acquisition's motions to dismiss on August 24, 2001.

## *ANALYSIS*

*Defendants' Motion to Dismiss for Improper Service*

Six defendants, namely CRH, Amcor, Oldcastle Architectural West, Oldcastle APG West, Oldcastle APG National and Trenwyth, have moved to dismiss this action on the ground that more than 120 days elapsed before they were served with process, in violation of Fed. R. Civ. P. 4(m). Although B&R maintains that service was within the prescribed 120-day period, it is clear from a routine review of the docket that B&R failed to comply with this deadline. Specifically, because B&R filed its complaint on October 5, 2000, the

actual deadline for proper service was Friday, February 2, 2001.[6] B&R, however, failed to serve the six above named defendants by this deadline. Instead, these six defendants were served on Monday, February 5, 2001. Furthermore, B&R failed to request an extension prior to the service deadline.

Rule 4(m) provides that where "service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court . . . . shall dismiss the action as to that defendant . . . ." Fed.R.Civ.P. 4(m). Although in some circumstances a court may grant an extension for such service, as I explained in *United States v. Britt*, 170 F.R.D. 8 (D.Md. 1996), Circuit precedent mandates a showing of "good cause" in order for such an extension to be granted.[7] *Id.* at 9. Moreover, where a request for an

---

[6]B&R correctly assigns October 6, 2000, as the first day of the 120-day period for service. Fed.R.Civ.P. 6(a) provides:

> In computing any period of time prescribed or allowed by these rules, by the local rules of any district court, by order of court, or by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday . . . .

*Id.* B&R, however, is mistaken in its arithmetic. Counting 120 days consecutively from October 6, 2000, the 120th day falls on Friday, February 2, 2001, and not, as B&R argues, on Saturday, February 3, 2001.

[7]Fed.R.Civ.P. 4(j) was redesignated and amended as Fed.R.Civ.P. 4(m) on December 1, 1993. The advisory committee's notes to the amended rule authorizes the court to excuse plaintiffs from showing good cause for failing to serve defendants within the 120 day time frame. Fed. R. Civ.P. 4 advisory committee's notes. The Fourth Circuit, however, requires plaintiffs to show good cause for failing to adhere to the 120-day time requirement. *Mendez v. Elliot*, 45 F.3d

(continued...)

extension is made outside of the 120-day period, plaintiffs are required by Fed.R.Civ.P. 6(b) to demonstrate "excusable neglect." *Id.* (citing *Mendez v. Elliot*, 45 F.3d 75, 78-79 (4th Cir. 1995)).

Here, B&R failed to establish good cause. B&R responded to my February 7, 2001, show cause order by simply stating that plaintiffs had complied with Rule 4(m). Similarly, B&R's opposition to defendants' motion to dismiss failed to proffer good cause for their failure to comply with the strictures of Rule 4(m); the opposition simply reasserts their mistaken belief that they acted in compliance with the rule. In fact, no explanation was offered until B&R's filed its "Opposition to Defendant Oldcastle's Motion to Dismiss the Amended Complaint."[8]

B&R's explanation, however, is insufficient to establish good cause.[9] B&R's

---

[7](...continued)
75, 78-79 (4th Cir. 1995). As I discussed in *Britt*, 170 F.R.D. at 9, the Fourth Circuit's continued demand that plaintiffs demonstrate "good cause" has been widely criticized; nevertheless, district courts in this Circuit are bound by *Mendez. Id.*

[8]B&R's creative pleading does not disguise the fact that its "opposition" is in effect a surreply to Defendants Motion to Dismiss. As B&R is aware, "surreply memoranda are not permitted to be filed" except if "otherwise ordered by the court." Local Rule 105(2)(a). Despite the fact that B&R neglected to comply with local rules, I will nonetheless consider B&R's argument regarding Rule 4(m).

[9]"Good cause" encompasses reasonable diligent efforts to effect service on defendants. *Quann v. Whitegate Edgewater*, 112 F.R.D. 649, 659 (D.Md. 1986) (discussing good cause in the context of Rule 4(j), the predecessor of Rule 4(m)). In general, an attorney's "inadvertence or heedless[ness]" or "misplaced reliance, will not serve to excuse a failure to timely serve." *Id.*; *Motsinger v. Flynt*, 119 F.R.D. 373, 376 n.2 (M.D.N.C. 1988) (citations omitted). Instead, courts will consider "factors outside of a party's control" that prevent timely service, such as "evasive
(continued...)

explanation is as follows: the summonses were forwarded via overnight mail to the process server on Thursday, February 1, 2001; however, the process server, upon receipt of the summonses at 2:45 p.m. on Friday, February 2001, was unable to effect service until the following business day. This is clearly a case of inexcusable attorney inadvertence-- waiting until the last day to effect service.

In any event, even if I were not bound by the requirement prevailing in this Circuit that "good cause" be demonstrated, *see Hammad v. Tate Access Floors, Inc.*, 31 F.Supp.2d 524, 526 (D.Md. 1999)("[T]he court believes that the continued vitality of *Mendez* is seriously in doubt . . . ."), I would nevertheless decline to exercise my discretion to extend the time for service. As I noted in my memorandum to counsel, dated February 23, 2001, B&R's actions are inconsistent with both the letter and spirit of Fed.R.Civ.P. 4(m). B&R specifically requested that the clerk withhold the summonses until further notice. And then, B&R did not request issuance of summonses until the passage of approximately 117 days after filing the complaint. This calculated idleness should not be condoned by the court. Accordingly, I shall grant defendants' motion to dismiss B&R's claims against CRH, Amcor, Oldcastle Architectural West, Oldcastle APG West, Oldcastle APG National, and Trenwyth Industries.

---

[9](...continued)
or misleading conduct on behalf of defendant or illness on behalf of plaintiff." *Flynt*, 119 F.R.D. at 376 n.2.

*Defendants' Motions to Dismiss Parties Which Lack Legal Capacity to be Sued*

Defendants urge the court to dismiss B&R's claims against Superlite and Oldcastle Acquisition because they no longer exist as separate corporate entities. According to Gary Hickman, Vice President of Tax for Oldcastle, Superlite refers to an operating division of Oldcastle APG West, and not a separate incorporated entity. Hickman's Aff. at ¶ 26-28. Plaintiffs appear to concede this point, as they have failed to respond to this argument. Similarly, B&R appears to concede that Oldcastle Acquisition is a defunct corporation, stating that "Oldcastle Acquisition *was actually reported by the Pennsylvania Secretary of State to be merged into Trenwyth Industries, Inc., with Trenwyth being the surviving entity.*" *See* Pl.'s First Amended Complaint at ¶ 9 (emphasis in original).

As an unincorporated division, Superlite and Oldcastle Acquisition lack the capacity to be sued. *See Equal Employment Opportunity Comm'n v. St. Francis Xavier Parochial School*, 77 F.Supp.2d 71, 75-76 (D.D.C.1999) (explaining that unincorporated divisions lack the capacity to be sued because they lack any independently recognized legal status); *United States v. ITT Blackburn Co., a Div. of ITT*, 824 F.2d 628, 631-32 (8th Cir. 1987) (acknowledging that "an unincorporated division cannot be sued or indicted, as it is not a legal entity"); *Western Beef, Inc. v. Compton Inv. Co.*, 611 F.2d 587, 590 (5th Cir. 1980) (explaining that an unincorporated division is "not a separate legal entity wholly apart from its owner"); *In re Sugar Indust. Antitrust Litig.*, 579 F.2d 13, 18 (3d Cir. 1978). Implicit in this rationale is the fact that unincorporated divisions do not possess any assets-- all assets

are owned by the corporation. *St. Francis Xavier Parochial School*, 77 F.Supp.2d at 76 (citations omitted). "Thus, '[u]nless the organization is liable there can be no levy of execution against a division's assets, and if the organization is not liable none of its assets can be used to satisfy the judgment.'" *Id.* (citations omitted) (alterations in original). Accordingly, I shall grant defendants' motion to dismiss B&R's claims against Superlite Block and Oldcastle Acquisition.[10]

*Defendants' Motion to Dismiss for Lack of Personal Jurisdiction*

Defendants argue that the court lacks personal jurisdiction over Oldcastle and Oldcastle Architectural. Because defendants have raised a Rule 12(b)(2) defense of lack of personal jurisdiction, B&R bears the burden of proving that the court can exercise personal jurisdiction by a preponderance of the evidence. Here, however, given that the court has decided to adjudicate this motion without a hearing, the plaintiff need only prove a *prima facie* case of personal jurisdiction in order to defeat a motion to dismiss for lack of personal jurisdiction. *See Choice Hotels, Int'l, Inc. v. Madison Three, Inc.*, 23 F.Supp.2d 617, 619 & n. 1 (D.Md. 1998) (citing *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993) and *Blue Ridge Bank v. Veribanc, Inc.*, 755 F.2d 371, 373 (4th Cir.1985)). In considering a

---

[10]Defendants assert this same argument with respect to defendants Trenwyth, Amcor, and Oldcastle Architectural West--contending, for various reasons, that these defendants also lack the capacity to be sued. Although I need not rule on the merits of these arguments (as the claims against these defendants will be dismissed due to insufficient process), plaintiffs' failure to address defendants' argument that Trenwyth, Amcor, and Oldcastle Architectural West lack the capacity to be sued cast serious doubt on B&R's claims against these defendants. If they are joined in any new action, there may be Fed.R.Civ.P. 11 implications.

challenge to personal jurisdiction, I will "construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).

Both Maryland appellate courts and the United States Court of Appeals for the Fourth Circuit "have shown a willingness to collapse [the long-arm and constitutional] inquiries into a single analysis, since the Maryland Long-Arm Statute is to be interpreted as extending to constitutional limits." *Choice Hotels*, 23 F.Supp.2d at 619 (citing Maryland and Fourth Circuit personal jurisdiction precedent).

The Supreme Court has stated that a court may constitutionally exercise general jurisdiction where a defendant's activities in the forum state are "so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *International Shoe Co. v. State of Washington*, 326 U.S. 310 at 318 (1945). Specific jurisdiction occurs when a cause of action arises out of the defendant's minimum contacts with the forum. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). Here, the exercise of specific personal jurisdiction requires a prima facie showing by plaintiff that (1) defendants purposely directed its activities toward plaintiff, a resident of Maryland, the forum state, or purposely availed itself of the privilege of conducting activities here; (2) plaintiff's cause of action arises out of or results from defendants' Maryland-related contacts; and (3) Maryland's exercise of personal jurisdiction

in the case is reasonable, i.e., is consistent with "fair play and substantial justice." *See Choice Hotels*, 23 F.Supp.2d at 620 (quoting *Cape v. von Maur*, 932 F.Supp. 124, 126 (D.Md. 1996), and *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477-78 (1985)). In assessing the sufficiency of defendants' contacts with Maryland for long-arm and constitutional purposes, the "touchstone" is whether defendants's contacts were "purposefully established" by defendants such that it "will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Choice Hotels*, 23 F.Supp.2d at 620 (citing *Burger King*, 471 U.S. at 474-75 (citations omitted)). *See Municipal Mortg. & Equity v. Southfork Apartments Ltd. Partnership*, 93 F.Supp.2d 622 (D.Md. 2000).

Defendant Oldcastle

Here, B&R maintains that the determination of whether Oldcastle's contacts were "purposefully established" hinge upon not only Oldcastle's contacts, but Amcor's contacts as well. According to B&R, this is because Oldcastle often traded and did business under the name Amcor. Specifically, B&R alleges that Oldcastle acquired Amcor and that subsequent to the acquisition, Oldcastle changed its trade name to Amcor.[11] B&R maintains that Oldcastle's alleged contacts with B&R, which were conducted under the name of Amcor, are

---

[11]Defendants rely upon (1) a letter from Amcor, in which Amcor represented that the assets of Amcor would be transferred to Oldcastle; (2) a consent agreement signed by B&R allowing Amcor to assign the Patent License Agreement and Trademark Agreement to Oldcastle; (3) the 1980 Know How Agreement which references the merger of Amcor into Oldcastle; and (4) a listing in the National Concrete Masonry Association directory, which characterizes Amcor as a division of Oldcastle.

sufficient to establish personal jurisdiction over Oldcastle.[12]

Defendants, however, argue that none of Amcor's contacts and activities should be attributed to Oldcastle; they maintain that Oldcastle never controlled or owned Amcor. Defendants, instead, present the following corporate history for Amcor: (1) prior to November 1, 1978, Amcor existed as a separate corporate legal entity with its principal place of business in Salt Lake City, Utah; (2) on November 1, 1978, Cemstone, Inc. ("Cemstone"), at the time a first-tier subsidiary of Oldcastle, acquired certain assets of Amcor (Cemstone, however, did not acquire any shares of Amcor, nor did Cemstone acquire Amcor, the business entity); (3) in 1979, Cemstone changed its legal name to Amcor; and (4) on December 31, 1994, Amcor merged into Oldcastle Precast, Inc. ("Oldcastle Precast").

B&R, recognizing that the corporate status of both Amcor and Oldcastle is disputed, has requested the opportunity to conduct jurisdictional discovery. Defendants, however, generally argue that the discovery sought by B&R should be denied because B&R has failed to raise any issues of fact with regard to jurisdictional issues. I disagree. It is clear that the facts bearing on the question of jurisdiction are genuinely in dispute. Therefore, "limited discovery [is] warranted to explore jurisdictional facts . . . ." *See Mylan Labs., Inc. v. Akzo*, 2 F.3d 56, 64 (4th Cir. 1993) (citing *McLaughlin v. McPhail*, 7-7 F.2d 800, 806-07 (4th Cir.

---

[12]B&R contends that jurisdiction exists over Oldcastle because, *inter alia*, Oldcastle, doing business as Amcor, participated in the negotiation of agreements with B&R and because Oldcastle is the successor or assignee of trade mark and patent license agreements with B&R, which are at the heart of this case.

1983) (per curiam)). Accordingly, I will grant B&R's request to conduct jurisdictional discovery.

Defendant Oldcastle Architectural

B&R argues that the "conspiracy theory of personal jurisdiction" should be applied to exercise jurisdiction over Oldcastle Architectural. Courts that have approved the exercise of long-arm jurisdiction pursuant to the "conspiracy theory of personal jurisdiction" consistently require a threshold showing that a conspiracy existed and that the defendants participated therein. *McLaughlin v. McPhail*, 707 F.2d 800, 807 (4th Cir. 1983) (citations omitted). Here however, B&R offers nothing more than conclusory allegations in its one-paragraph argument concerning the "conspiracy theory of personal jurisdiction."[13] Because conclusory allegations of a conspiracy are insufficient to create jurisdiction under this theory, *McPhail*, 707 F.2d at 807, I will grant defendants' motion to dismiss the first amended complaint with regard to Oldcastle Architectural.

*Defendants' Motion to Dismiss for Failure to State a Claim*

Defendants have also moved to dismiss Counts I through XX for failure to state a claim. I will reserve judgment on these motions, until the outstanding jurisdictional issues have been resolved.

---

[13]B&R's only support for the application of the "conspiracy theory of personal jurisdiction" appears to be that Oldcastle Architectural acquired Trenwyth on December 31, 1998.

## *CONCLUSION*

For the reasons stated above, defendants' motion to dismiss shall be granted as to defendants CRH, Amcor, Oldcastle Architectural West, Oldcastle APG West, Oldcastle APG National and Trenwyth Industries because plaintiffs utterly failed to effect service of process within 120 days as required by Fed. R. Civ. P. 4(m). Defendants' motions to dismiss claims against Oldcastle Acquisition and Superlite shall be granted because they lack the capacity to be sued. I shall also grant defendants' motion to dismiss the first amended complaint with respect to Oldcastle Architectural for lack of personal jurisdiction. I will reserve judgment, however, as to defendants' motions to dismiss defendant Oldcastle for lack of personal jurisdiction. Pending resolution of the outstanding jurisdictional issues, I will reserve judgment on defendants' motions to dismiss for failure to state a claim as to all remaining defendants.

Filed: October 15, 2001

_____
ANDRE M. DAVIS
UNITED STATES DISTRICT JUDGE